# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 17-cv-23924-DPG

SARA GEDA,

      Plaintiff,

vs.

2K CLEVELANDER, LLC,

      Defendant.

_____/

_____

## PLAINTIFF, SARA GEDA'S, RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

_____

Respectfully submitted,

**LAW OFFICES OF PAUL A. SACK, P.A.**
1130 Washington Avenue, Suite 3
Miami Beach, Florida 33139
Telephone: 305-397-8077
Facsimile: 305-763-8057

By:   /s/ PAUL A. SACK, ESQ.
FBN: 363103
Primary: paul@paulsacklaw.com
ps1619@bellsouth.net

R. BRANDON DEEGAN, ESQ.
FBN: 117368
Primary: deegan@paulsacklaw.com

THOMAS LARNED, ESQ., *of counsel*
Fla. Bar. No.: 1002344
Primary: tlarned@thejusticegroupconsulting.com

## PLAINTIFF, SARA GEDA'S, RESPONSE IN OPPOSITION
## TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff responds to Defendant's Motion for Summary Judgment (Doc. 35) and states:

1.　　Plaintiff, Sara Geda, worked as a bartender for the Defendant, 2K Clevelander, LLC.  She alleges Defendant violated the Fair Labor Standards Act and seeks damages for overtime wages under 29 U.S.C. § 207(a) and/or minimum wages under 29 U.S.C. § 206(a).

2.　　The Defendant's Motion places particular emphasis on the Section 207(i) <u>overtime</u> exemption while carefully avoiding discussion of its failure to pay Geda less than the $7.25 federal minimum wage on a weekly basis as required. [1]  **However, Defendant does admit that "the Plaintiff's effective hourly rate fell … below the minimum wage rate",** *i.e.,* **that Defendant violated the FLSA.** [2] Defendant's own records demonstrate Plaintiff was paid less than minimum wage. [3]  This is before even taking into account off the clock work.

| Workweek | Regular hours | Regular pay | Overtime pay | Commissions | Total Paid (non-tip) | Rate |
|----------|---------------|-------------|--------------|-------------|----------------------|------|
| 1/19/2016 | 15.4 | | | $94.00 | $94.00 | $6.10 |
| 3/1/2016 | 7.9 | | | | $0.00 | $0.00 |

*Clevelander's,*

*Exhibit 3 Table*

3.　　Defendant is also liable for unpaid overtime wages under Section 207(a).  There is no question that Sara Geda worked overtime and was not paid overtime at all so it is the Defendant's burden to prove its Affirmative Defense by clear and affirmative evidence to excuse its failure to pay overtime during the purported exemption periods.

4.　　The attempted 7(i) overtime exemption is inapplicable for multiple independently sufficient reasons, including (1) due to the 'discretionary' nature of the 'service charges'; [4] (2)

---

[1] PSF ¶¶6, 15 (Doc. 44, p.3, 6); Timecard with Payroll and Clock In ID (Doc. 36-1, p.59-62)
[2] Defendant's Motion for Summary Judgment (Doc. 35, p.3)
[3] Timecard with Payroll and Clock In ID (Doc. 36-1, p.59-62)
[4] PSF ¶¶ 5-6; 19-27 (Doc. 44, p.2-3, 8-10)

Defendant's failure to articulate and implement a 'bona fide commission rate'; [5] (3) Defendant's failure to establish a proper 'Representative Period'; [6] and (4) failure to provide sufficient evidentiary support by failing to produce and withholding Plaintiff's 'commission' spreadsheets and pay calculation records. [7]

     5.    As discussed in Plaintiff, Sara Geda's, Motion for Partial Summary Judgment (Doc. 39), she was not subject to the 7(i) overtime exemption because it is undisputed that discretionary "service charges" were actually gratuities paid by the customers to the employees. [8] Discretionary "service charges" are in fact tips that belong to the employee—not the employer—and cannot be considered 'commissions' used to satisfy the 7(i) exemption or used to satisfy minimum wage obligations. [9] **There is no question that the "service charges" were in fact discretionary, as mandated in Defendant's own policy as a "right" of the customer: [10]**



| SOUTH BEACH | | | |
|---|---|---|---|
| LSOP #: | FB 03.01.14(A) | Department: | Food and Beverage |
| Subject: | Tipping Procedure | Date: | 3-11-14 |

Clevelander and Essex House profit centers and all room service checks.  The guest has the right to increase or decrease the service charge based on their perception of the service that was provided.  These tips will be allocated based off of the procedural steps listed below (steps 3 - 5)

---

[5] PSF ¶¶7-9; 16-17

[6] See Attached Expert Report, p.17 ("Defendant has not clearly established its representative period, as required by the statute. … Further, the representative period alluded to in Defendant's policy is less than a month, whch fails to meet the statutory requirement…"); and March 11, 2014 7(i) Policy (Doc. 37-1, p.6)

[7] In Flores v. 2K Clevelander, LLC, the Defendant took a similar approach in filing a Motion for Summary Judgment with incomplete 'commission' spreadsheets. No. 16-cv-24083-UU, 2017 WL 505456 (S.D. Fla. May 4, 2017). **After reviewing hundreds of pages of spreadsheets, the Court "agree[d] with Plaintiff that the [Clevelander] seeks to 'circumvent FLSA's overtime requirements by presenting a fictional commission scheme…"** Id. at 6. **Defendant's new strategy is to hide the spreadsheets altogether.** The actual spreadsheets demonstrate that no bona fide commission rate was ever used and that Defendant failed to use the correct ADP time data to calculate wages, resulting in tens of thousands of dollars of unpaid wages.

[8] This is alleged as Defendant's Thirteenth Affirmative Defense. (Doc. 9, p.7)

[9] Absent a proper tip credit which was not used and has not been alleged as affirmative defense by the Defendant, as discussed below.

[10] PSF ¶¶ 5-6; 19-27 (Doc. 44, p.2-3, 8-10)

6.    The Clevelander has not put forth sufficient evidence to even shift the burden to Plaintiff on its affirmative defense. The exemption requires demonstrating precisely how an employee's pay was calculated, using actual dollar amounts.  The Clevelander has not submitted the spreadsheets that were purportedly used to calculate Plaintiff's pay. The Clevelander clearly recognizes that it cannot put forth documents showing how it calculated Plaintiff's pay.

7.    Defendant raises for the first time in its Motion—*in a footnote*—the possibility of using a "tip credit." to account for its failure to pay minimum wages.  A 29 U.S.C. § 203(m) "tip credit" can be used to partially offset minimum wage obligations under certain circumstances. However, Section 203(m), establishes strict employee notice and compliance requirements which were never satisfied by Defendant. [11]   The statute does not permit an employer to simply retroactively use a tip credit. Defendant never previously discussed this 'tip credit' as a potential defense, much less provided evidence of meeting the strict notice and compliance requirements.

8.    **Defendant failed to even mention 'tip credits' in its Affidavit or Statement of Facts. [12]  This is precisely because the Defendant never had a tip credit system in place.** Fatally, Defendant also never alleged a tip credit affirmative defense in its Answer.  Defendant cannot pivot to an entirely new defense post discovery.  This is not the first time the Clevelander has attempted an eleventh-hour pivot to a new defense. [13]

---

[11] "[A]n employer who fails to provide information required by Section 203(m) of the FLSA regarding the tip-credit … cannot use the tip-credit provision and therefore must pay the tipped employee at least the minimum wage and allow the employee to keep all tips ..." *Bennett*, 2017 WL 894624, at *2 (citing 29 U.S.C. § 203(m))." Santana v. Duke, LLC, 2017 WL 2608808, at *6 (M.D. Fla. May 16, 2017), report adopted, 2017 WL 2600752 (M.D. Fla. June 15, 2017)

[12] **U.S. Southern District of Florida Local Rule 56.1 requires that the movant set forth all "material facts as to which it is contended that there does not exist a genuine issue to be tried…" Defendant never mentioned a tip credit in its Statement of Facts or in its Affidavit.**

[13] "This is especially glaring in light of the fact that Defendant moved for summary judgment, in part based on the [affirmative defense exemption] … before Defendant formally sought leave…This is inexcusable … To be clear, Plaintiff would be prejudice by Defendant amending

4

9.      The 7(i) overtime exemption is a separate affirmative defense from a tip credit affirmative defense and—*even if Defendant had complied with the tip credit notice provisions; had alleged it as an affirmative defense; had provided some evidence in support in its Statement of Facts; and had not kept tips for itself in violation of the tip credit provisions*—it must choose to proceed under one affirmative defense or the other at the dispositive stage, not both. [14]

10.      As a defense to the unpaid minimum wages, Defendant references its 'de minimis' affirmative defense argument, an FLSA affirmative defense which specifically pertains to preliminary and postliminary activities, *e.g.*, driving to and from work. [15]   As referenced in Defendant's own exhibit above, Plaintiff neglected to pay employees for entire weeks and pay periods.  Failing to pay its employees' minimum wages for entire weeks at a time is not 'de minimus'—it is a clear-cut violation of federal law.  If the unpaid wages are insignificant to the Clevelander, it should simply pay the back wages it owes its employees.  Employees should not be penalized for insisting that they be paid a simple minimum working wage.

## MEMORANDUM OF LAW

### *Plaintiff Incorporates her Statement of Material Facts (Doc. 44)*

**i.      Legal Standard**

Summary Judgment is appropriate when the pleadings, depositions, answers to Interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

its Answer and Affirmative defenses … as this case has "progressed to the dispositive motion stage and discovery [has] long been completed." <u>Flores v. 2K Clevelander, LLC</u>, No. 16-cv-24083-UU, 2017 WL 505456 at *4 (S.D. Fla. May 4, 2017) (internal citations omitted)

[14] "The undersigned urged Defendant to resolve its alternative theories of the case, with regard to the Tip Credit Affirmative Defense and the Retail Establishment Affirmative Defense ..." <u>Gigena v. Tapas & Tintos, Inc.</u>, No. 10-23422-CIV, 2012 WL 696947 at *1 (S.D. Fla. 2012)

[15] This Seventh Affirmative Defense refers to 'de minimus' as defined under the Fair Labor Standards Act and asserts "that any alleged overtime … was de minimus" (Doc. 9, p.6)

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  An issue is 'genuine' only if there is sufficient evidence with which a reasonable jury could find for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

**ii.      Fair Labor Standards Act**

Federal law demands that employers pay to covered employees a **minimum wage** of $7.25 per hour under Section 206(a)(1):

(a) Employees engaged in commerce….Every employer shall pay to each of his workweek is engaged in commerce … or is employed in an enterprise engaged in commerce … wages at the following rates: (1) except as otherwise provided in this section, not less than— … (C) $7.25 an hour…

Federal law also demands that employers pay to covered employees **overtime**, absent an exemption under Section 207(a):

"Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce … or is employed in an enterprise engaged in commerce … for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

Where an employer is found liable for failure to pay the specified minimum hourly wage or overtime under §§206 and/or 207, the employer must pay the successful plaintiff employee the amount of unpaid minimum wages or unpaid overtime compensation, liquidated damages in an amount equal to their awards for minimum wage and overtime payments under 29 U.S.C. § 216, and reasonable expenses and attorney's fees.

In contrast to the 207(i) overtime exemption discussed below, a tip credit is a credit where an employer credits 'tips' against a portion of an employer's minimum wage obligations.  This credit is limited and can only credit a portion for each hour.  A tip credit has strict notice requirements that must be proved.  "**An employer cannot take an FLSA 3(m) tip credit unless**

**it informs the tipped employee of the provisions of section 3(m) prior to taking a tip credit.**

**Where an employer does not inform the tipped employee of the use of the tip credit, the full**

**minimum wage is due.**" DOL Field Operations Handbook ("FOH") 30d00(e)(3) (emphasis

supplied). [16]

As this United States District Court, Southern District of Florida explained:

Employers wishing to apply a tip credit to an employee's minimum wage must comply with 29 U.S.C. § 203(m). **29 U.S.C. § 203(m) requires an employer to give notice to employees that it is applying a tip credit** or using a tip pool. *See Bennett*, 2017 WL 894624, at *2. **"[A]n employer who fails to provide information required by Section 203(m) of the FLSA regarding the tip-credit and use of tip pools,** cannot use the tip-credit provision and therefore must pay the tipped employee at least the minimum wage, and allow the employee to keep all tips received." *Bennett*, 2017 WL 894624, at *2 (citing 29 U.S.C. § 203(m)).

Santana v. Duke, LLC, 216CV190FTM99MRM, 2017 WL 2608808, at *6 (M.D. Fla. May 16, 2017), report and recommend. adopted, 216CV190FTM38MRM, 2017 WL 2600752 (M.D. Fla. June 15, 2017)

Federal law also demands that employers pay to covered employees 1.5 x their 'Regular

Rate' of pay.  Importantly, it does not require 1.5 x 'minimum wage as is a common misconception,

but rather 1.5 x 'Regular Rate' which is specifically defined under the FLSA.   Section 207(i)

provides an exemption from the FLSA's **overtime** provisions:

No employer shall be deemed to have violated [overtime] subsection [207](a) by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee

---

[16] FOH 30d00(e)(3): 29 CFR 531.59(b) states that the employer must inform its tipped employees, in advance of taking the FLSA 3(m) tip credit, of the following requirements in section 3(m): **a.** The amount of the cash wage that is to be paid to the tipped employee by the employer, which may not be less than $2.13 per hour **b.** The additional amount by which the wages of the tipped employee are increased on account of the tip credit … **c.** The amount of the tip credit claimed may not exceed the value of the tips actually received by the employee **d.** All tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement … **e.** An employer may not claim a tip credit for any employee who has not been informed of these provisions … (minimum wage poster) alone is not sufficient …

is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half of his compensation for a representative period (not less than one month) represents commissions on goods or services. In determining the proportion of compensation representing commissions, all earnings resulting from the application of a **bona fide commission rate** shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

**Absent a tip credit, tips cannot be used to offset an employer's pay obligations including under the 7(i) overtime exemption discussed above**. "A tip is a sum presented by a customer to the tipped employee as a gift or gratuity in recognition of some service performed for him. … Tips are the property of the employee whether are not the employer has taken a tip credit…" 29 CFR 531.52.  "The only ways in which an employer may use its employee's tips are through a valid tip pool … or as a partial wage credit. … These restrictions on an employer's use of its employees' tips apply even when the employer has not taken a tip credit …." FOH 30d00(e)(2).

Thus, because 'discretionary' service charges are, in fact, tips, they belong to the employee and cannot be used to satisfy the 7(i) exemption.  Virgin v. Escalante-Black Diamond Golf Club, LLC, 2014 WL 12591472 at *1-3 (M.D. Fla. Aug. 4, 2014) (Finding that the fact that "The Plaintiff argues that the service charge was discretionary and that he personally witnessed several members complain about the service charge and have it removed" was a factor that weighed in favor of its status as a tip as opposed to a compulsory, non-discretionary service charge).

### iii.    Unpaid Minimum Wage

Defendant has failed to pay Plaintiff minimum wage in addition to overtime.  Defendant's Motion admits, in a footnote, that "the Plaintiff's effective hourly rate fell … below the minimum

wage rate". Defendant has, thus, admitted it violated the FLSA. **This is before even taking into account off the clock work attested to by Plaintiff and multiple fellow employees.**

Doc. 36-1, p.33

| Pay Statement: 2016 -9 -1 | | | | | |
|---|---|---|---|---|---|
| 2k Clevelander Llc | **Period Beginning Date** 2/17/2016 | **Pay Date** 3/7/2016 | **Co.** TTG | **Clock** XN5OP | **Home Dept** 520112 |
| Sara Geda 7164 Lyle Terrace Apt. 3 Fort Myers, FL 33907 | **Period Ending Date** 3/1/2016 | **WGPS Advance Pay Date** | **File #** 010411 | **Number** 00090092 | **Worked In Dept** 520112 |
| Gross Pay | | | | | $ 0.00 |
| Regular | | | Hours: 7.90 | | |

Notably, the Defendant has placed particular emphasis on the 29 U.S.C. § 207(i) <u>overtime</u> exemption while avoiding the fact that it failed to pay Geda less than the $7.25 federal minimum wage on a weekly basis as required (7(i) is an overtime exemption, not a minimum wage exemption).

*Source: Clevelander's Exhibit 3 Table*

| Workweek | Regular hours | Regular pay | Overtime pay | Commissions | Total Paid (non-tip) | Rate |
|---|---|---|---|---|---|---|
| 1/19/2016 | 15.4 | | | $94.00 | $94.00 | $6.10 |
| 3/1/2016 | 7.9 | | | | $0.00 | $0.00 |

This is before adding in the alleged 'off the clock work'  For the two periods referenced above, Plaintiff worked an additional 2.5 hours per day which must be added as well. [17]  ___*In other words, she was already paid less than minimum wage—before even adding in hundreds of hours of off the clock work.*___

The Defendant obviously failed to not only track employee time but somehow failed to enter the correct ADP time on the vast majority of every employee's spreadsheet. [18]  Defendant has never provided an explanation for why the spreadsheet time is completely incorrect.  Further, as discussed below, Defendant failed to properly record the employee's hours worked.

---

[17] Doc. 42-1, ¶¶12-13, p.4-8; PSF ¶¶9, 15
[18] Doc. 42-1, p.3-4 (Geda Response Affidavit, ¶9-13)

Regulation 516.2 sets forth the general recordkeeping requirements for employers: "(a)…
Every employer shall maintain and preserve payroll or other records containing the following
information and data with respect to each employee… (7) Hours worked each workday and total
hours worked each workweek…" 29 C.F.R. 516.2.  Not only did Defendant admit to having time
recordation errors every single day, but the employees testified that they were required to cash out
before clocking out.  As Defendant's own expert stated in Beck v. Boce Group, L.C.:

> Plaintiffs' depositions consistently indicate that they were … always required to
> clock out before they "cashed-out". … [T]he Defendants failed to meet their
> obligation under the FLSA to maintain an accurate record of hours worked.  In such
> cases it is necessary to rely primarily on the information obtained from the
> employees… Although many of the Plaintiffs' depositions were not exact … they
> provided sufficient information from which such hours may reasonably be
> reconstructed. (No. 1:05-cv-01473-CC-, Doc. 320-17, p.14, 31 (May 30, 2008))

Defendant's expert further stated that for damage calculations, it was proper to use
estimates as to the range of hours by employees.  Id. at 34. He concluded: "I am ready to testify,
without hesitation…that the Plaintiffs are entitled to back wage compensation under the FLSA
based on the reconstruction of hours outline above. Id. at 39.  The evidence of incorrect time
recordation goes well beyond the testimony of employees to Defendant's own admissions: [19]

-Lopez to all employees (including Geda): **"We continue to have time card errors on a
daily basis"** (6/4/14); (6/3/14); (6/2/14); (5/28/14); (5/22/14); (5/19/14); (5/13/14); (5/12/14);
(5/7/14); (5/6/14); (5/5/14); (4/30/14); (4/29/14); (4/25/14); (4/24/14); (4/15/14); (4/14/14).
-Borges to all employees: "**Time Card Errors = NO Tips will be paid**" (3/17/14)
-Lopez to all employees: if there are time card errors **"COMMISSIONS CANNOT BE
PAID OUT ACCURATELY"** (6/4/14); (5/28/14); (5/13/14);  (5/12/14); (4/25/14)
-Borges to all employees (including Geda): "**COMMISSIONS CANNOT BE PAID OUT
ACCURATELY.**" (4/10/14 at 10:37 am). Borges to all employees (including me): **"We continue
to have time card errors on a daily basis"**. (4/10/14 at 10:37 am). Borges to all employees
(including me): **"Time is to be recorded in order to accurately determine how much is owed.
If there is a time card error, this process cannot be completed."** (4/10/14 at 10:37 am). Borges
to all employees (including me): **"You are paid based on hours worked"** (4/8/14 at 1:32 pm).
Borges to all employees (including me): "**As you know in order to properly calculate your tip**

---

[19] See Geda Response Affid. (Doc. 42-1, p.5-8); Defendant's Emails (Doc. 44-1); PSF ¶9, 15-16
(Doc. 44, p.5-7)

**distribution, hours are required to accurately determine how much is owed. If there is a time card error, this process cannot be completed."** (3/17/14 at 12:05 pm)

The employees also testified that they were required to clock out before a lengthy cash out period.  Together with time clock errors, Defendant failed to record on average 2.5 hours per work day. [20]  As testified to Geda, this resulted in a significant sum of unrecorded hours.  Plaintiff is owed minimum wages on a week by week basis regardless of whether the 7(i) overtime exemption existed.  This is <u>before</u> even taking into account the off the clock work.  Defendant references its 'de minimis' affirmative defense argument in relation to this issue which specifically refers to preliminary and postliminary activities. [21]  Failing to pay its employees' minimum wages for entire weeks at a time is not 'de minimus'—it is a clear cut violation of federal law.  In fact, as referenced in Defendant's exhibit above, Plaintiff neglected to pay employees for entire pay periods.

Plaintiff raises for the first time—in a footnote—the possibility of using a tip credit.  It has never alleged this as a defense, much less mentioned it in its Answer or discovery responses at all.  This makes sense because there was no base cash wage so the use of a tip credit would be meaningless.  Importantly, the 7(i) overtime exemption has nothing to do with tip credits and an employer cannot simultaneously use both.  Further, an employer cannot retroactively use a tip credit.  As the Court explained in <u>Santana v. Duke, LLC</u>: [22]

> Employers wishing to apply a tip credit to an employee's minimum wage must comply with 29 U.S.C. § 203(m) **[which] requires an employer to give notice to employees that it is applying a tip credit** or using a tip pool. ... **"[A]n employer who fails to provide information required by Section 203(m) of the FLSA regarding the tip-credit and use of tip pools**, cannot use the tip-credit provision and therefore must pay the tipped employee at least the minimum wage, and allow the employee to keep all tips received."

---

[20] Doc. 42-1, ¶¶12-13, p.4-8; PSF ¶¶9, 15

[21] This Seventh Affirmative Defense refers to 'de minimus' as defined under the Fair Labor Standards Act and asserts "that any alleged overtime … was de minimus" (Doc. 9, p.6)

[22] <u>Santana v. Duke, LLC</u>, 216CV190FTM99MRM, 2017 WL 2608808, at *6 (M.D. Fla. May 16, 2017), <u>report and recommend. adopted,</u> 216CV190FTM38MRM, 2017 WL 2600752 (M.D. Fla. June 15, 2017) (internal citation omitted)

Further, it would be improper for Defendant to use this unpled affirmative defense for the first time. Tip credit is an affirmative defense [23] but was never alleged as an affirmative defense. Defendant cannot pivot to an entirely new defense post discovery and months after the deadline to amend. United States District Judge Ungaro previously denied the Clevelander's attempt to amend to add an unpled affirmative defense. Flores v. 2K Clevelander, LLC, No. 16-cv-24083-UU, 2017 WL 505456 at *4 (S.D. Fla. May 4, 2017) ("This is especially glaring in light of the fact that Defendant moved for summary judgment, in part based on the [affirmative defense exemption] … before Defendant formally sought leave…This is inexcusable ..."). [24]

### iv.    Clevelander's Discretionary Service Charge

As Annie Borges, the HR Director who set up the attempted 7(i) exemption explained in the emails explaining that there were time card errors every day: the employees were paid based on distributions of tips. "As you know in order to properly calculate your tip distribution..." (3/17/14 at 12:05 pm). See Geda Response Affidavit. Borges to all employees (including Geda): "Time Card Errors = NO Tips will be paid" (3/17/14 at 12:05 pm). See Geda Response Affidavit. This is precisely because the discretionary service charges were, in fact, tips. Doc. 37-1, p.6:



---

[23] Gigena v. Tapas & Tintos, Inc., No. 10-23422-CIV, 2012 WL 696947 at *1 (S.D. Fla. 2012) ("the undersigned urged Defendant to resolve its alternative theories of the case, with regard to the Tip Credit Affirmative Defense and the Retail Establishment Affirmative Defense…")

[24] "[T]he Eleventh Circuit has repeatedly explained, "[r]equiring a defendant to plead certain defenses affirmative serves the important purpose of providing notice to the plaintiff and the court." Id. quoting Pulliam v. Tallapoosa Cty. Jail, 185 F.3d 1182, 1185 (11th Cir. 1999). "For this reason, failing to plead an affirmative defense generally results in waiver ..." Flores at *4

Discretionary service charges cannot be used to satisfy the 7(i) exemption as they are tips rather than service charges.  Discretionary service charges are tips which cannot be used to satisfy minimum wage and overtime wage requirements. [25]  This is in contrast to compulsory, non-discretionary service charges, which are not considered tips, but are rather part of an employer's gross receipts which can be used to satisfy minimum wage and overtime wage requirements. Virgin v. Escalante-Black Diamond Golf Club, LLC, 2014 WL 12591472 at *1-3 (M.D. Fla. Aug. 4, 2014) (Finding that the fact that "The Plaintiff argues that the service charge was discretionary and that he personally witnessed several members complain about the service charge and have it removed" was a factor that weighed in favor of its status as a tip as opposed to a compulsory, non-discretionary service charge). [26]  The Wyndham Court reviewed a challenge to a Magistrate Judge's finding that: "**(c) the fact that the service charge may be removed by a supervisor or a manager shows that the fee was not compulsory."**:

> [T]he Court fully agrees with the analysis…" Plaintiffs have shown that the service charge was subject to change or could even be eliminated from the client's bill.… Hence, there **is clearly an issue of material fact** regarding the nature of the assessed fee, **that is, whether it is a compulsory service charge or whether it is indeed a "disguised" tip."**. [27]

Defendant's policy specifically says that the 'service charges' are discretionary. (Doc. 37-1, p.6).  Defendant argues its system depends on service charges qualifying as commissions. [28]  It

---

[25] Absent a tip credit which has not been alleged as a defense and is a separate issue from 207(i) overtime exemption affirmative defense, as discussed above.

[26] In Defendant's Response to Plaintiff's Motion for Summary Judgment (Doc. 40, p.5). Defendant argues that this case was not based on the 7(i) exemption. This is based on a misunderstanding of the relevance of the nature of the tip.  If it is a tip, the funds do not belong to the employer and cannot be used to satisfy the exemption. In other words, there is a separate body of case law as to whether or not a sum is a tip that belongs to the employee rather than the employer.

[27] Cachola-Bonilla v. Wyndham El Conquistador, 577 F.Supp.2d 566, 573-74 (D.P.R. 2008)

[28] Def's Interrogatory Answer #5 (Doc. 36-2, p.6)

has further stated that when Plaintiff was not doing separate hourly work, all pay was made to her and other employees from service charges and 'overtips' (both of which constitute tips because service charges were discretionary and for the other reasons discussed herein). [29]  If the service charges are discretionary: they are 'Tips' that belong to the employee; are not considered paid by the employer; are not included in the 'Regular Rate'; and there cannot be a 7(i) exemption paid by the discretionary service charges.  Because the Defendant contends pay was entirely based on these discretionary service charges, the 'Regular Rate' falls to virtually nothing, negating the 7(i) exemption on this additional basis (in addition to lack of 'commission').  Bradescu v. Hillstone Rest. Group, Inc. 2014 WL 5312546, at *4 (C.D. Cal. Sept. 18, 2014). [30]  There is no question that the service charges were in fact discretionary. [31]

In Cachola-Bonilla v. Wyndham El Conquistador Resort & Country Club, the Court refused to grant summary judgment to the Defendants who were claiming a 7(i) defense. 577 F.Supp.2d 566 (D.P.R. 2008).  The Court said: "Plaintiffs have shown that the service charge was subject to change or could even be eliminated … if the client as much as questioned the fee. ... Hence, there is clearly an issue of material fact regarding the nature of the assessed fee, that is, whether it is a compulsory service charge or whether it is indeed a "disguised" tip. … The Magistrate Judge concluded that [the language on the menu does not indicate a compulsory service charge]." Id.  Here, both Plaintiff, Geda, and fellow employee Alban testified to and provided a

---

[29] Def's Interrogatory Answer #7 (Doc. 36-2, p.7-8)
[30] "The parties agree, citing 29 C.F.R. §§ 531.52, 531.55, 531.60, that tips do not have to be included in the "regular rate," while a "service charge" does because the latter is compulsory, whereas the former (both in its existence and amount) is a matter determined solely by a customer. Hillstone argues that the large-party 18% gratuity does not constitute a service charge includable in Plaintiffs "regular rate" because the customers were never required to pay the 18%, and maintained sole discretion to waive, negotiate or otherwise determine the amount of any appropriate gratuity. On this issue as well, there is a triable issue of fact."
[31] See Tip Affidavits (Doc. 37-1, p.1-8; 37-2, p.1-8; 37-3, p.1-8).

copy of the bar menu which does not mention any service charge at all, much less a 'mandatory service charge.' [32]  There is no question that the discretionary service charge was in fact a tip.

In Hart v. Rick's Cabaret Int'l, Inc., the fact that customers who had to pay a mandatory minimum charge for entertainment could pay more than the minimum did not support the notion that the payments were "service charges:" "Although the payments were not made "voluntarily" in the sense that the customers were obligated to pay some amount for the services they were receiving, the customer could choose the dancer to request the dance from, and could pay more than the price set by the club which the evidence established was a minimum price, but not a maximum." 967 F. Supp. 2d 901, 932 (S.D.N.Y. 2013). The Court found that the ability to increase the the amount was found to be inconsistent with a service charge.  The Clevelander's own receipts permits such adjustment with 'additional service charge':



*Source: 10/3/14 Receipt produced by Defendant;*
*Plaintiff's Tip Affidavit (Doc. 37-1, p.3, 8);*

The terms of the Defendant's Tipping Procedure policy, assert that the service charges are negotiable. (Doc. 37-1, p.6).  Further, the point of sale system has a button allowing the Clevelander to remove the service charge on the spot. "[Defendant's] argument that the fee was not compulsory because only a supervisor or manager could remove it still misses the mark. That argument on its face shows that the fee was not compulsory: if a customer did not want to pay the fee, then she or he could have the manager remove it."  Cachola-Bonilla v. Wyndham El Conquistador Resort & Country Club, 577 F.Supp.2d 566, 574 (D.P.R. 2008).  "We removed the service charges using the point of sale cash registers upon request by customers because the

---

[32] PSF ¶6; Geda Affid. (Doc. 42-1, p.2 ¶5, p.17-18); Alban Affid. (Doc. 42-2, p.2 ¶5, p.9-10)

'service charges' were discretionary tips.".[33]  The Clevelander streamlined removal of this gratuity with a button on its cash register.[34]

It is the position of the USDOL/WH that discretionary service charges are tips. Particularly important is "evidence indicating whether the payment is mandatory or optional, including whether the customer exercises discretion regarding whether the quality of the service merits the payment and the amount of the payment…"[35]  As discussed in the attached Expert Report, the DOL would find that the the alleged service charge is not truly compulsory. As noted in the DOL FOH, tips are not commissions at all, much less bona fide commissions. This would not only invalidate the 7(i) defense but would mean that Defendant is also liable for unpaid minimum wages.[36]

### v.     Failure to Articulate a Bona Fide Commission Rate; Improperly Including Overtips; Failure to Designate a Representative Period; and Failure to Present Sufficient Evidence

Among other things, the 7(i) exemption requires that the Defendant prove that the employer implemented a system to pay the employee pursuant to a "bona fide commission rate" and that it actually used this "bona fide commission rate" in a consistent manner (otherwise the rate is a fiction).  Flores v. 2K Clevelander, LLC, No. 16-cv-24083-UU, 2017 WL 505456 (S.D. Fla. May 4, 2017) ("The commission must be a 'bona fide commission rate.' 29 U.S.C. § 207(i)" and requires that the Defendant prove "that the employer paid the employee using a consistently

---

[33] Doc. 37-1, p.3
[34] Doc. 37-1, p.3
[35] DOL Field Operation Handbook ("FOH") 30d03 ("Service Charges") (emphasis supplied)
[36] As discussed in the attached Expert Report, the DOL FOH addresses this situation: "(1) A tip credit may not be retroactively included in back wage calculations" "The WHD will not allow an employer to claim an FLSA 3(m) tip credit on a retroactive basis where the employer has not met the requirements for taking a tip credit. For example, **an employer that pays no wages (i.e., employees received only tips) will be required to pay the full minimum wage** and will not be able to claim an FLSA 3(m) tip credit. 30d01(b)(1) (emphasis added)"

applied methodology that could constitute a 'bona fide commission.").   The Defendant cannot

change this rate from hour-to-hour or day-to-day.  It cannot pretend there is a rate. There must be

a "bona fide commission rate".  It is clear that the Defendant never established or used a bona fide

commission rate, even considering 'overtips' as commissions—amounts that are strictly property

of the employee and cannot be considered overtips. [37]   Even the HR Director who set up this

purported exemption system has no idea what formula was used or how 'commissions' were

supposed to be calculated:

> Q. Were there any documents that stated what percentage from the service charge each of
> these employees would receive? **A. I don't recall.**
> Q. Was it a complicated calculation? Ms. Leichter: Form.
> Q. Do you know of any requirement as to how the commissions are calculated under the 7(i)
> exemption? **A. No. I don't remember that.** (HR Director Borges, 70:8-20; Doc. 43-1, p.20)
> Q. Out of nearly 100 employees you only recall three or four ever asking you how their
> commissions were calculated? Ms. Leichter: Form
> A. That I can recall.
> Q. Do you think that's odd? Ms. Leichter: Form
> A. I think many things are odd to be quite honest with you. (110:13-21; Doc. 43-1, p.30)

Defendant has failed to produce any records showing the use of a "bona fide commission

rate".  A movant cannot meet its burden on summary judgment if it fails to produce the records

showing that a bona fide commission calculation was actually used, *e.g.*, producing no

spreadsheets or incomplete spreadsheets.  Id. at *6 (Defendant "asks the Court to rely on

incomplete spreadsheets to include that Defendant compensates Plaintiff using a 'bona fide'

commission rate. … This evidence, viewed in the light most favorable to Plaintiff, is not even

sufficient to shift the burden to Plaintiff on summary judgment.").

It is also the Defendant's burden to show that there is a 7(i) 'representative period' that is

being analyzed for purposes of determining whether the exemption is met (due to fluctuations in

---

[37] PSF ¶¶7-9; 16-17

pay). The Defendant must pick and designate a "representative" period, but it never did so at the time Geda was employed, and it has again failed to designate a period at all here (a pre-requisite to the analysis). [38]   Further, Defendant has failed to show that it designated any representative period and the representative period Defendant alludes to in its policy is two pay periods (28 days), which is less than the requisite period, as discussed in the attached Expert Report.

Defendant has again not even submitted sufficient evidence to shift the burden to the Plaintiff on its affirmative defense, much less to prove that there is no genuine dispute as to any material fact. These spreadsheets use incorrect data, improper variables, and would not prove its case even if they had been submitted. [39] **Importantly, it is even impossible for the Defendant to perform the requisite 1.5 x minimum wage calculations to prove its exemption because 'overtips' are included in the calculations [40]; Defendant failed to properly record time; Defendant miscalculated pay; and Defendant forced Plaintiff to work off the clock. [41]**

The Court in <u>Flores v. 2K Clevelander, LLC,</u> looked to <u>Klinedinst</u> [42] in analyzing an attempted exemption: **"The commission must be a 'bona fide commission rate.' 29 U.S.C. § 207(i) … [T]he party moving for summary judgment based on the 7(i) Exemption must demonstrate that there is no genuine issue of material fact that the employer paid the employee using a consistently applied methodology that could constitute a 'bona fide commission.'"** 2017 WL 505456 at *5 (S.D. Fla. May 4, 2017) (emphasis supplied).

---

[38] "[F]or each employee whose exemption is to be tested in any workweek under clause (2) of section 7(i), an appropriate representative period or a formula for establishing such a period must be chosen and must be designated and substantiated in the employer's records" 29 CFR 779.417(d)
[39] <u>See</u> Geda Response Affidavit (Doc. 42-2, p.3-4;  ¶9-13)
[40] In addition to 'discretionary service charges' which are tips as discussed above.
[41] PSF ¶¶7-9; 16-17
[42] <u>Klinedinst v. Swift Investments, Inc.</u>, 260 F.3d 1251, 1256 (11th Cir. 2001)

The Court rejected the Clevelander's reliance on its conclusory affidavit statement that "it paid Plaintiff based on compulsory services charges which were then divided among employees 'using the hours worked, specific duties involved, and the specific bars the employee was assigned to for a particular shift.'" Id. It noted that such conclusory description is not sufficient, and that it must present "the records needed to show that it actually utilized the commission structure". Id. Failure to do so was "not even sufficient to shift the burden to Plaintiff on summary judgment." Id. The Court rejected the same conclusory statement used in Defendant's Affidavit. Id.

The Court in Flores found that the Clevelander failed to show that it implemented a consistently implemented bona fide commission rate methodology. Id. The Court reviewed more than 500 pages of evidence presented by the parties and found: "The Court, therefore, agrees with Plaintiff that Defendant seeks to 'circumvent FLSA's overtime requirements by presenting a fictional commission scheme to the court' based on paying an "arbitrary hourly rate." Id. at *6. [43] The Defendant did the same thing in Flores as it is doing here: relying on a conclusory Affidavit backed with incomplete records.  The pertinent material facts are in dispute, and Plaintiff respectfully submits that Defendant's Motion for Summary Judgment should be denied.

## CONCLUSION

For the foregoing reason and the reasons set forth in the attached Expert Report, Plaintiff respectfully submits that the Court should deny Defendant's Motion for Summary Judgment

WHEREFORE, Plaintiff, Sara Geda, respectfully requests that the Court deny Defendant's Motion for Summary Judgment; grant Attorneys' Fees and Costs if proper; and grant such other relief as may be deemed just and proper.

---

[43] Defendant continues to refer to Flores as if it was based on lack of records that is has now remedied. Ironically, the Clevelander submitted hundreds of pages of spreadsheets it has decided not to submit in support of its Motion.

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that a true and correct copy hereof has been served by electronic

mail upon all persons on the attached service list on April 6, 2018.

Respectfully submitted,

**LAW OFFICES OF PAUL A. SACK, P.A.**
1130 Washington Avenue, Suite 3
Miami Beach, Florida 33139
Telephone: 305-397-8077
Facsimile: 305-763-8057

By:     <u>/s/ PAUL A. SACK, ESQ.</u>
FBN: 363103
Primary: paul@paulsacklaw.com
ps1619@bellsouth.net

R. BRANDON DEEGAN, ESQ.
FBN: 117368
Primary: deegan@paulsacklaw.com

THOMAS LARNED, ESQ., *of counsel*
Fla. Bar. No.: 1002344
Primary: tlarned@thejusticegroupconsulting.com

## SERVICE LIST

JOHN CODY GERMAN, ESQ.
Fla. Bar No. 58654
Cole, Scott & Kissane, P.A.
Attorney for Defendant
9150 South Dadeland Boulevard, Suite 1400
P.O. Box 569015
Miami, Florida 33256
Telephone: (786) 268-6441
Facsimile: (305) 373-2294
Primary: cody.german@csklegal.com
yvonne.orosa@csklegal.com

REBECCA R. ANGUIANO, ESQ.
Fla. Bar No. 99690
Cole, Scott & Kissane, P.A.
Attorney for Defendant
9150 South Dadeland Boulevard, Suite 1400
P.O. Box 569015
Miami, Florida 33256
Telephone: (786) 268-6441
Facsimile: (305) 373-2294
Primary: rebecca.anguiano@csklegal.com
tania.gomez@csklegal.com

PAUL A. SACK, ESQ.
Fla. Bar No. 363103
Paul A. Sack, P.A.
Attorney for Plaintiff
1130 Washington Avenue, Suite 3
Miami Beach, Florida 33139
Telephone: (305) 397-8077
Facsimile: (305) 763-8057
Primary: paul@paulsacklaw.com
ps1619@bellsouth.net

R. BRANDON DEEGAN, ESQ.
Fla. Bar No. 117368
Paul A. Sack, P.A.
Attorney for Plaintiff
1130 Washington Avenue, Suite 3
Miami Beach, Florida 33139
Telephone: (305) 397-8077
Facsimile: (305) 763-8057
Primary: deegan@paulsacklaw.com

THOMAS LARNED, ESQ.
Fla. Bar No. 1002344
Attorney for Plaintiff
1130 Washington Avenue, Suite 3
Miami Beach, Florida 33139
Telephone: (305) 397-8077
Facsimile: (305) 397-8077
tlarned@thejusticegroupconsulting.com